# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTINA NEWTON, | § § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00322-SDJ-CAN |
| v. | § § | |
| STATE FARM LLOYDS, | § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant State Farm Lloyds's Motion for Summary Judgment [Dkt. 36]. Having considered State Farm's Motion, Plaintiff's Response [Dkt. 31], and all other relevant filings, the Court recommends State Farm's Motion for Summary Judgment [Dkt. 36] be **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

## BACKGROUND

*Instant Lawsuit*

Plaintiff Christina Newton's ("Plaintiff") suit arises out of an insurance claim for damage to the laminate composition shingle roof of her residence, allegedly caused by a wind and hailstorm in March 2019 [Dkt. 11 at 2]. On March 18, 2021, Plaintiff filed her original petition in the 431st District Court of Denton County, Texas, Cause No. 21-2093-431, against State Farm Lloyds ("Defendant" or "State Farm") [Dkt. 1 at 1]. On April 22, 2021, Defendant removed Plaintiff's suit to the Eastern District of Texas based on diversity jurisdiction [Dkt. 1]. On June 4, 2021, Plaintiff filed her amended complaint – the live pleading – alleging State Farm underpaid her insurance claim for wind/hail damage to the roof of her residence in violation of the Texas

Insurance Code and in breach of her insurance policy with State Farm [Dkt. 11]. On June 21, 2021, this matter was referred to the undersigned for pretrial proceedings [Dkt. 13].

Plaintiff asserts two groups of claims against Defendant: (1) breach of contract; and (2) noncompliance with the Texas Insurance Code. With respect to the Texas Insurance Code, Plaintiff contends Defendant violated the prompt payment requirements under Chapter 542 of the Texas Insurance Code, and asserts "laundry list" claims under Chapter 541 of the Texas Insurance Code, specifically §§ 541.051, 541.060, and 541.061, for Defendant's alleged misrepresentations, unreasonable investigation and explanation of the claim, and failure to settle the claim in good faith [Dkt. 11 at 6-8]. As to Chapter 542, Plaintiff alleges the "failure of State Farm to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code," specifically failure to "pay for policy benefits owed to [Plaintiff] within the period set forth under Section 542.058" [Dkt. 11 at 6]. Plaintiff seeks statutory interest and attorney's fees under § 542.060, § 541.152, and pursuant to Texas Civil Practice & Remedies Code §§ 38.001-38.003; as well as costs, pre-judgment interest, and post-judgment interest [Dkt. 11 at 6, 8-9]. To reiterate, by and through these claims, Plaintiff asserts that State Farm underestimated the scope and cost to repair and replace the damage from hail and/or wind to the roof, fence, and interior rooms of the home resulting in underpayment of the claim [Dkt. 11 at 2-3].

*Motion for Summary Judgment*

On February 22, 2022, State Farm filed a Motion for Summary Judgment [Dkt. 36]. State Farm argues it is entitled to summary judgment on each of Plaintiff's Texas Insurance Code claims [Dkt. 36 at 5-10]. State Farm urges Plaintiff has not shown that a genuine issue of material fact exists as to these extra-contractual claims, and therefore, summary judgment is warranted.

State Farm does not move for summary judgment on Plaintiff's breach of contract claim [Dkt. 36 at 2].

*Claims "Conceded" by Plaintiff – Texas Insurance Code Chapter 541*

On March 15, 2022, Plaintiff filed a Response to Defendant's Motion for Summary Judgment [Dkt. 40]. In her Response, Plaintiff makes clear she is abandoning any claims brought under Chapter 541 of the Texas Insurance Code after considering rulings on such claims in other Eastern District of Texas cases [Dkt. 40 at 2]. Because Plaintiff concedes or otherwise abandons these claims, summary judgment on them is proper. *See Rasco v. Potter*, No. H-05-0034, 2007 WL 9758165, at *2 (S.D. Tex. Jan. 4, 2007) (granting summary judgment in favor of the defendant on the claims the plaintiff abandoned), *aff'd*, 265 F. App'x 279 (5th Cir. 2008). Therefore, the undersigned recommends dismissal of each of Plaintiff's claims for violations of Chapter 541 of the Texas Insurance Code, and any claim for attorney's fees under such Chapter as well. Again, State Farm does not move for summary judgment on Plaintiff's breach of contract claim, and this claim should proceed to trial. Thus, the sole remaining claim(s) for the Court's consideration in connection with the pending Motion are the alleged violations of Texas Insurance Code Chapter 542.[1] At Hearing on March 22, 2022, the Parties confirmed no Reply would be filed.

---

[1] In its briefing on Chapter 541, State Farm avers that Plaintiff's failure to show any misrepresentation or bad faith in its handling of the claim also means it has reasonably and timely paid the claim. But there is no "good faith" defense to violations of Chapter 542's deadlines and defeating Plaintiff's Chapter 541 claims does not relieve State Farm of potential liability for violations of prompt pay requirements. *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 832 n.8 (Tex. 2019) ("An insurer's obligation to pay interest and fees depends solely on whether the insurer 'delays payment on a claim' or fails comply with the Act's requirements; it does not depend on the insurer's unreasonableness, negligence, intentional noncompliance, bad faith, or breach of some other standard.") (collecting cases); *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1000 (N.D. Tex. 2018) ("it is not apparent that Hanover's reasonable basis for denying Hall Arts's claim automatically absolves it of liability regarding the promptness of making a determination. Because Hanover offers no evidence or argument that Hall Arts's claim under § 541.060(a)(4)(A) shares the same predicate for recovery as Hall Arts's bad faith action, the court declines to grant Hanover's motion for summary judgment on this claim."). Dismissal of Plaintiff's Chapter 541 claims is not sufficient to show Plaintiff's prompt pay claims fail as a matter of law. *See Jajou v. Safeco Ins. Co. of Indiana*, No. SA-20-CV-00839-XR, 2022 WL 220391, at *12 (W.D. Tex. Jan. 24, 2022) (quoting *Hall Arts*, 327 F. Supp. 3d at 1000) ("Safeco does not argue that Jajou's claims under sections 541.060(a)(4) and 542.058 are premised upon the same theory

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The substantive law will identify which facts are material. This means only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (cleaned up).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1131 (2019). When the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S.

---

underlying her bad faith claim. Thus, 'it is not apparent that [Safeco's] reasonable basis for denying [Jajou's] claim automatically absolves it of liability regarding the promptness of making a determination.' Safeco has also failed to present any argument for summary judgment of these claims based on any other grounds. These claims, therefore, may proceed to trial.").

at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). The Court need only consider the record materials cited by the parties. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted).

## SUMMARY JUDGMENT EVIDENCE

State Farm submits the following evidence in support of its Motion for Summary Judgment:

    Exhibit A [Dkt. 36-1]: Excerpts from the Deposition of Plaintiff Christina Newton;

    Exhibit B [Dkt. 36-2]: State Farm Estimate;

    Exhibit C [Dkt. 36-3]: State Farm Correspondence to Christina Newton and Daniel Newton Dated August 23, 2019; and

    Exhibit D [Dkt. 36-4]: Plaintiff's Homeowner Policy Renewal Declaration and Policy.

Plaintiff submits the following evidence in her Response:

    Exhibit A [Dkt. 40-1]: Appraisal Determination;

    Exhibit B [Dkt. 40-2]: Defendant's August 23, 2019, Estimate;

    Exhibit C [Dkt. 40-3]: Defendant's August 23, 2019, Correspondence;

    Exhibit D [Dkt. 40-4]: Plaintiff's Appraisal Letter; and

    Exhibit E [Dkt. 40-5]: Plaintiff's Expert Report.

No objections have been made to the Court's consideration of any of the submitted summary judgment evidence.[2]

***Undisputed Facts***

Plaintiff is the named insured and owner of a homeowner's insurance policy purchased from State Farm (the "Policy") [Dkts. 11 at 2; 36 at 1; 36-4; 40 at 1]. Plaintiff owns the insured property, her residence, located at 4001 Marigold Lane, Prosper, Texas 75078 (the "Property") [Dkts. 11 at 2; 36 at 3]. Plaintiff's Policy for the Property covers losses caused by hail, wind, and damages to the residence subject to certain exclusions [Dkts. 11 at 2-3; 15 at 2; 36 at 3; 36-4 at 3]. On March 24, 2019, the date of loss, Plaintiff's Property was subject to hail and/or wind damage from a storm [Dkts. 11 at 2; 36 at 3]. Plaintiff filed a claim under the Policy on or around August 14, 2019, and State Farm inspected the Property on or around August 16, 2019 [Dkts. 36 at 3; 40 at 1].[3] Following completion of its investigation, on August 23, 2019, State Farm notified Plaintiff it would pay a net claim of $176.67 based on its estimate finding a replacement cost value of $6,705.92 for the damage with recoverable depreciation of $592.25, and less the deductible of $5,937.00 [Dkts. 11 at 3; 15 at 3; 36 at 3; 36-3 at 2; 40 at 1]. State Farm tendered payment in the amount of $176.67 together with such notification [Dkts. 36-3 at 2; 40-3 at 1]. State Farm's correspondence states its investigation concluded that some of the observed damage to the Property was "not caused by wind and hail," and that it was denying coverage "for damage to shingles and

---

[2] State Farm did move to strike each of Plaintiff's non-retained testifying expert Bob Hovanec [Dkt. 26] and retained expert Brandon Allen [Dkt. 27]. The undersigned recommended denial of each request to strike [Dkts. 44; 45]. More recently, and long after briefing on the instant summary judgment was concluded, State Farm filed a further request to strike Hovanec [Dkt. 47].

[3] Plaintiff's response states the Property was inspected on August 17, 2019 [Dkt. 40 at 1]. State Farm's documents alternatively identify both August 16 and August 17 as the date of inspection. State Farm's Estimate lists August 16 as the date of inspection [Dkts. 36-2 at 4; 40-2 at 3], but State Farm's Correspondence to Christina Newton and Daniel Newton, dated August 23, 2019, identifies August 17 as the date of inspection [Dkts. 36-3 at 2; 40-3 at 1]. Neither Party raised this as a relevant fact in dispute, and further, the date of inspection is not material because no Chapter 542 prompt payment deadline begins to run from the date of inspection, as explained herein. *See* TEX. INS. CODE §§ 542.055 to 547.085.

REPORT AND RECOMMENDATION – Page 6

other exterior roofing components, except those covered damages identified in our estimate, because such other damage is excluded by" certain policy provisions [Dkts. 36-3 at 2; 40-3 at 1].

The correspondence cites the following exclusion in the Policy:

> **SECTION I – LOSSES NOT INSURED**
> 1. *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
> g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;
> h. corrosion, electrolysis, or rust;
> i. wet or dry rot;
> k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;
> l. all animals, birds, or insects.
> > (1) This includes:
> > (a) nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;
> > (b) costs to remove animals, birds, or insects from the covered property; and
> > (c) costs to prevent the animals, birds, or insects from returning to the property;
> > (2) However, *we* will pay for:
> > (a) losses caused by wild bears or deer; and
> > (b) the breakage of glass or safety glazing material that is a part of a ***building structure***, when caused by animals, birds, or insects; or
> m. pressure from or presence of tree, shrub, or plant roots.
> However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

[Dkts. 36-3 at 2-3; 40-3 at 1-2].

The estimate further states that "State Farm also observed that there are a number of roof shingles that do not have any damage. The policy insures for accidental direct physical loss" [Dkts. 36-3 at 3; 40-3 at 2]. The following was then cited from the Policy:

> **SECTION I – LOSSES INSURED**
> **COVERAGE A – DWELLING**
> *We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT**

> **INSURED** or otherwise excluded or limited in this policy. Accidental means happening by chance, unexpectedly, and/or unintended from *your* standpoint. However, loss does not include and *we* will not pay for, any *diminution in value*.

[Dkt. 36-3 at 3; 40-3 at 2].

On August 17, 2020, Plaintiff invoked her right to an appraisal under the terms of the Policy [Dkt. 40 at 1].[4] The appraisal provision at issue states, in relevant part:

> **4. Appraisal.**
> If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.
> a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.
> b. The appraisers will then attempt to set the amount of loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.
> The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon *you* and *us*.
> . . .
> f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable compensation of the umpire will be paid equally by *you* and *us*.

[Dkt. 40-4 at 1-2]. On January 27, 2021, the appraisal award was issued, finding the amount of loss was $47,400.47 [Dkts. 15 at 3; 40-1 at 16]. The appraisal award includes "replacement of the laminate shingles" [Dkt. 40-1 at 1]. No Party disputes that State Farm did not pay the appraisal award. Plaintiff pleads State Farm "modified the appraisal award to remove all non-covered items" [Dkts. 15 at 4; 40 at 2]. This lawsuit revolves, in large part, around the Parties' dispute regarding

---

[4] Although the instant Motion does not mention the appraisal process, State Farm admitted in its amended answer that Plaintiff properly invoked the appraisal process under the terms of the Policy [*See* Dkt. 15 at 3].

REPORT AND RECOMMENDATION – Page 8

the amount of the appraisal award, specifically including whether the total covered loss should include repair or replacement of the roof, and further, whether damage to the fence and certain interior fixtures is covered under the Policy. Plaintiff believes State Farm underpaid her claim.

## ANALYSIS

### *Chapter 542 Claims – Summary of Grounds for Dismissal*

State Farm argues the issue to be decided at summary judgment is "[w]hether there is a genuine issue of material fact as to whether Defendant violated Chapter 542 of the Texas Insurance Code by delaying payment of Plaintiff's claim pursuant to Section 542.058" [Dkt. 36 at 4].[5] Plaintiff further breaks down the issues to be decided by the Court in connection with her Chapter 542 claims as: (1) "[w]hether Defendant's acknowledgement of Plaintiff's breach of contract claim allows Plaintiff's claims under Chapter 542.055, Chapter 542.056, and 542.058 to proceed to trial"; and (2) "[w]hether a genuine issue of material fact exists as to Plaintiff's claims under Chapter 542.055, Chapter 542.056, and Chapter 542.058 of the Texas Insurance [C]ode as to whether the Defendant has failed to timely pay the claim" [Dkt. 40 at 2].

### *Chapter 542 – The Texas Prompt Payment of Claims Act*

Chapter 542 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act ("TPPCA"), imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims. TEX. INS. CODE § 542.054 ("This subchapter

---

[5] State Farm urges this case is nothing more than for breach of contract, and Plaintiff has not alleged any "independent injury" for her extra-contractual claims [Dkt. 36 at 2]. No authority is cited for the proposition that Plaintiff must show an "independent injury" beyond statutory prompt pay damages under Chapter 542 when she also seeks damages under the contract. As discussed further herein, Plaintiff's statutory prompt pay damages are damages separate from her breach of contract claim. *See State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901 (Tex. App.—Texarkana Feb. 15, 2022, pet. filed) (quoting *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, 634 S.W.3d 54, 75 (Tex. App.—Houston [1st Dist.] 2019, no pet.)) ("An insured's claim for breach of an insurance contract 'is distinct and independent from a claim that an insurer violated the Insurance Code.'").

REPORT AND RECOMMENDATION – Page 9

shall be liberally construed to promote the prompt payment of insurance claims."). The TPPCA imposes five key requirements on insurers:

> (1) the insurer must acknowledge receipt of the claim, commence any investigation of the claim, and request any items, statements, or forms required from the claimant within fifteen days of its receipt of notice of the claim; (2) the insurer must notify the claimant of acceptance or rejection of the claim no later than fifteen business days after the insurer receives all items, statements, and forms required to secure final proof of loss; (3) if the insurer notifies the insured that it will pay all or part of the claim, it must pay it by the fifth business day after the date of notice of acceptance of the claim; (4) if the insurer delays payment of a claim for more than the applicable statutory period or sixty days, the insurer shall pay TPPCA damages; and (5) an insurer that is liable for a claim under an insurance policy and violates a TPPCA provision is liable for TPPCA damages in the form of 18% interest on the amount of the claim per year, with attorney's fees.

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812-13 (Tex. 2019) (citing TEX. INS. CODE §§ 542.055(a)(1)–(3), .056(a), .057(a), .058(a), 060(a)). The Texas Supreme Court describes the TPPCA's requirements by grouping them into "three main components—non-payment requirements and deadlines, deadlines for paying claims, and enforcement." *Id.* at 813 (citing TEX. INS. CODE §§ 542.055–.060). As set forth by §§ 542.055-.056(a), the first category of TPPCA requirements relate to notice, requiring that an insurer: provide notice to the insured of receipt of their claim; initiate an investigation; request all information the insurer reasonably believes is required for the investigation; and notify the insured within 15 days of acceptance or rejection of the claim. TEX. INS. CODE §§ 542.055-.056. The TPPCA's payment deadlines then include two primary requirements for paying claims. First, under § 542.057(a), an insurer has five business days to pay the insured "[i]f an insurer accepts the claim, in whole or in part." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 653 (Tex. 2021). Second, under § 542.058 and most relevant here,

> if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

TEX. INS. CODE § 542.058(a). The final component of the TPPCA is enforcement and remedy: the insurer is liable for statutory attorney's fees and 18% statutory interest as a penalty if that insurer is found liable for a claim under a policy in violation of any TPPCA provision. Section 542.060 states, in relevant part:

> if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.

TEX. INS. CODE § 542.060(a). "To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with *one or more sections* of the TPPCA in processing or paying the claim." *Barbara Techs.*, 589 S.W.3d at 813 (citing TEX. INS. CODE § 542.060(a)).

Upon review, a genuine issue of material fact exists only for Plaintiff's allegation that State Farm violated § 542.058. Although Plaintiff's statement of issues argues a genuine issue of material fact exists as to her claims under §§ 542.055 and 542.056 [Dkt. 40 at 2], no factual allegations related to §§ 542.055 or 542.056 appear in the live pleading,[6] nor does either Party in any way brief these sections [*See* Dkts. 11 at 6; 36; 40]. And while State Farm discusses the 5-day deadline applicable under § 542.057 in connection with its arguments for dismissal, Plaintiff never once references or discusses § 542.057. Plaintiff's Response to the instant Motion raises no

---

[6] The factual allegations in the live pleading are limited to the claim that "State Farm failed to pay for policy benefits owed to Mrs. Newton within the period set forth under Section 542.058" [Dkt. 11 at 6]. The sole reference to any other provision of Chapter 542 is the name of the statute, alleging "violation of Section 542.051 *et seq.* of the Texas Insurance Code" [Dkt. 11 at 6].

REPORT AND RECOMMENDATION – Page 11

issue of material fact that State Farm failed to provide notice of receipt of the claim or that it failed to accept or reject the claim within the 15-day window set forth in §§ 542.055-.056 or that State Farm did not comply with § 542.057 [*See* Dkt. 40 at 7]. Plaintiff focuses solely on State Farm's alleged violation of § 542.058, urging failure to pay the appraisal amount in full renders the Court incapable of determining compliance with the 60-day deadline under § 542.058 at this stage of the proceedings [Dkt. 40 at 4-7] ("Plaintiff can demonstrate a genuine issue of material fact regarding Plaintiff's § 542 claims because Defendant has not paid the amount that Defendant will ultimately owe on the claim"). Thus, to the extent asserted, any claims under §§ 542.055, 542.056, and 542.057 should also be dismissed.[7] [8]

***Plaintiff's Section 542.058 Claim Should Proceed to Trial***

State Farm urges this is a breach of contract dispute and not a "bad faith" case [Dkt. 36 at 2]. Plaintiff rejoins that State Farm's failure to move for summary judgment on the breach of contract claim precludes the Court, at summary judgment, from finding that her § 542.058 claim is barred, noting that on multiple prior occasions, this Court has permitted both § 542.058 and breach of contract claims to proceed to trial [Dkt. 40 at 4-6]. In *Hinson*, this Court explained:

> [T]he Court is unable to discern compliance with the sixty-day period for payment contained in § 542.058(a). The Fifth Circuit has held that "[a] wrongful rejection of a claim may be considered a delay in payment for purposes of the 60-day rule and statutory damages." Moreover, "if an insurer fails to pay a claim, it runs the risk of incurring th[e] 18 percent statutory fee and reasonable attorneys' fees[.]" Here, because Plaintiff's claim for breach of contract is going forward to trial, so to [sic] should the question of whether Defendants have violated the sixty-day period to promptly pay Plaintiff's claim. Plaintiff's claim under the Texas Insurance Code § 542.058 must, as the Parties agree, proceed to trial.

---

[7] To be clear, § 542.060 provides the remedy for a violation of Chapter 542, including § 542.058; it is not a source of a separate duty nor a provision for finding a violation distinct from the rest of the subchapter. *See* TEX. INS. CODE § 542.060(a) ("if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.").

[8] State Farm's arguments related to § 542.057 will be further addressed in connection with the Court's consideration of § 542.058.

*Hinson v. State Farm Lloyds*, No. 4:20-CV-00093-SDJ-CAN, 2021 WL 1131231, at *11 (E.D. Tex. Mar. 10, 2021) (internal citations omitted) (quoting *Barbara Techs.*, 589 S.W.3d at 818), *report and recommendation adopted*, No. 4:20-CV-093-SDJ, 2021 WL 1608495 (E.D. Tex. Apr. 26, 2021); *see Olschwanger v. State Farm Lloyds*, No. 4:19-CV-933-SDJ, 2021 WL 3858061, at *1 (E.D. Tex. Aug. 30, 2021) (reaching a similar conclusion that "Plaintiff's claims for breach of contract and violation of § 542.058 of the Texas Insurance Code shall proceed to trial."). State Farm's Motion cites no authority dictating a contrary result. Under the present facts, the Court agrees with Plaintiff that liability for a prompt payment violation under § 542.058 cannot yet be determined as a matter of law. *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 826-27 (S.D. Tex. 2011) ("because [defendant] does not seek summary judgment on [plaintiff's] claim for breach of contract, summary judgment on this [TEX. INS. CODE § 542.058(a)] claim would be premature. A determination as to whether [defendant] wrongfully delayed payment is dependent on the unresolved issue of whether [defendant] is liable under the policy."); *Saleme v. State Farm Lloyds*, No. 118CV00632MACZJH, 2021 WL 4206177, at *5 (E.D. Tex. Aug. 27, 2021) (citing *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 134 (Tex. 2019)) ("State Farm argues that Saleme's common law and statutory claims must be dismissed because they stem from the breach of contract claim that was supposedly precluded when State Farm paid the appraisal award. This argument fails because Saleme's breach of contract claim survives."), *report and recommendation adopted*, No. 118CV00632MACZJH, 2021 WL 4197622 (E.D. Tex. Sept. 14, 2021); *see also Jajou v. Safeco Ins. Co. of Indiana*, No. SA-20-CV-00839-XR, 2022 WL 220391, at *12 (W.D. Tex. Jan. 24, 2022) ("Plaintiff's breach of contract claim and extracontractual claims for violation of sections 541.060(a)(4) and 542.058 may proceed to trial.").

State Farm urges against this result, arguing that failure to pay the claim in full does not constitute delay but instead is only a dispute about the amount of the contract claim [Dkt. 36 at 10]. More specifically, State Farm argues prompt pay liability only applies when it "misses a statutory payment deadline that it owes under a policy," which is expressly limited to "amounts that <u>must be paid under</u> the policy" [Dkt. 36 at 9-11 (emphasis in the original)]. State Farm argues it has fully complied with all the deadlines under Chapter 542 by notifying Plaintiff it would pay part of the claim on the same day that it issued the $176.67 payment, satisfying the 5-day deadline in Section 524.057.

Plaintiff conversely argues that a fact issue exists as to whether State Farm has paid the full amount owed on the claim within 60 days, given its failure to pay the appraisal award in full [Dkt. 40 at 6]. Plaintiff advances that the definition of claim refers to the *full* amount that "must be paid by the insurer" and "not the amount the insurer agrees to pay" [Dkt. 40 at 4] (citing *Hinojos*, 619 S.W.3d at 658); thus, Plaintiff urges a genuine issue of material fact exists as to whether State Farm's payment of $176.67 – what State Farm agreed to pay – is the amount it will *ultimately* owe on the claim [Dkt. 40 at 7]. Plaintiff points to State Farm's failure to pay the full appraisal award as evidence demonstrating a fact issue, explaining:

> Here, Defendant agreed to pay $176.67 on August 23, 2019. In order to satisfy the requirements under § 542, Defendant's payment for $176.67 must be the amount that Defendant will ultimately owe on the claim, not merely what the insurer agreed to pay. *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021). While not dispositive, but certainly probative—the appraisal award determined the extent of loss to be $47,400.47. Ex. A. In addition, Plaintiff's testifying expert concluded the damages to be $40,435.34. Ex. E; Ex. F.

[Dkt. 40 at 7].[9]

---

[9] Again, State Farm has raised no objection to consideration of these exhibits in connection with resolution of the pending Motion for Summary Judgment. Interestingly, State Farm's Motion makes no reference to the appraisal process invoked by Plaintiff under the terms of the Policy, nor that an umpire was invoked to resolve the impasse between State Farm's and Plaintiff's appraisers as to the value of the claim.

At its core, the issue raised by the Parties is whether State Farm's compliance with the 5-day notice-payment requirement under § 542.057 also constitutes compliance with the 60-day prompt pay deadline under § 542.058 [Dkt. 36 at 10].[10]  Plaintiff does not dispute that State Farm issued payment of $176.67 within the 5-day window by tendering payment on the same day it informed Plaintiff that it would pay part of the claim [Dkt. 40 at 7].  However, the 5-day deadline is a distinct notice-payment deadline under § 542.057, which sets the maximum amount of time permitted between providing notice that the insurer will pay the claim and issuance of payment. *See* TEX. INS. CODE § 542.057 ("if an insurer notifies a claimant under Section 542.056 that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made.").  The 60-day deadline to fully pay all amounts owed is a wholly separate requirement from the 5-day notice-payment deadline, as the Texas Supreme Court has made clear:

> Nothing in Chapter 542 discharges prompt payment liability based on the partial payment of the amount that "must be paid" under the policy. Otherwise, an insurer could pay a nominal amount toward a valid claim to avoid the prompt payment deadline that the Legislature has imposed. We rejected such a contention in *Republic Underwriters Insurance Co. v. Mex-Tex, Inc.*, holding in that case that an insurer owes interest on the amount of the claim it did not promptly pay when it makes a partial payment. The phrase "must be paid by the insurer" in the definition of "claim" includes the amount of the claim and "limits 'claim' to the amount ultimately determined to be owed, which of course would be net of any partial payments made prior to that determination." We explained that "[t]his encourages insurers to pay the undisputed portion of a claim early, consistent with the statute's purpose 'to obtain prompt payment of claims made pursuant to policies of insurance.'"

---

[10] More specifically, State Farm's Motion states that its payment made within 5 days under § 542.057 is enough to avoid liability for delayed payment under § 542.058:
> Plaintiff has alleged that State Farm delayed payment of her claim pursuant to Section 542.058, which requires that an insurer not delay payment for a period exceeding the period specified by the applicable statute, in this case not five days after notice the insurer will pay the claim pursuant to Section 542.057.

[Dkt. 36 at 10].

REPORT AND RECOMMENDATION – Page 15

> In urging that we depart from *Mex-Tex* in this case, [the dissenting justice] distinguishes between the statutory definition of "claim" and the amount ultimately owed under the policy, contending that "claim" is the amount that State Farm agreed to pay, not the amount it owed. Chapter 542, however, expressly defines "claim" to include the amount that "must be paid by the insurer," not the amount the insurer agrees to pay.38 Chapter 542's definition of claim, in the context of sections 542.058 and 542.060, comprises both liability for the loss and the amount owed for that loss. The amount "that must be paid" may not be established until after an insurer's investigation (or an appraisal), but it does not make the statute's use of the word "claim" inconsistent. While an insured's demand constitutes a claim on the policy for the full amount of the loss, the statute provides deadlines for finalizing that amount. Removing the amount that "must be paid" from the statutory definition, as the dissenting Justices would do, fails to cohere with Chapter 542's primary remedy, which is "interest on the amount of the claim" that was not promptly paid.
>
> Finally, although the statute provides that an insurer may "notif[y] a claimant ... that the insurer will pay ... part of a claim," it does not authorize partial payment of an accepted claim—[the dissenting justice] conflates a partial acceptance with a partial payment when the statute expressly separates the two. Chapter 542 does not provide that a partial payment of a valid claim discharges liability for statutory interest. Accordingly, we hold that an insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires.

*Hinojos*, 619 S.W.3d at 657-58 (footnotes omitted) (citations omitted).[11] Thus, payment in compliance with the 5-day deadline under § 542.057 cannot be conflated with compliance under § 542.058 and its 60-day deadline. Further, to the extent State Farm's argument presupposes the

---

[11] *First United Methodist Church* is also contrary to State Farm's argued for application of the TPPCA's requirements. There, a state appellate court reversed summary judgment for the insurer after considering *Hinojos*, explaining that partial payment toward a claim does not relieve the insurer prompt pay liability when the amount to pay in full is disputed:
> Thus, like the insurance company in *Hinojos*, Mutual accepted First United's claim and paid some money toward that claim within the statutory window, and Mutual fully paid the amount that it owed to satisfy the claim after the statutory deadline had passed. The *Hinojos* Court held that the later payment of the appraisal award did not bar Chapter 542 liability.
> . . .
> Accordingly, because Mutual did not promptly pay the claim, First United is entitled to interest and attorney's fees as set out by the TPPCA. Therefore, the trial court erred by granting summary judgment on the basis that Mutual complied with the TTCPA as a matter of law.

*First United Methodist Church v. Church Mut. Ins. Co.*, No. 13-18-00048-CV, 2021 WL 3776728, at *2 (Tex. App.—Corpus Christi-Edinburg Aug. 26, 2021, no pet.) (internal citations omitted) (citing *Hinojos*, 619 S.W.3d at 655, 658; then citing *Alvarez v. State Farm Lloyds*, 601 S.W.3d 781, 783 (Tex. 2020) (holding that the payment of the appraisal award did not bar the insured's TPPCA claim)).

§ 542.058 deadline only applies to initial or pre-appraisal payments, the Texas Supreme Court has previously rejected this argument. *See Barbara Techs.*, 589 S.W.3d at 817 ("We have already explained that nothing in the TPPCA exempts appraisal payments from the TPPCA's payment deadlines or enforcement.");[12] *see also Terrazas v. Certain Underwriters at Lloyds, London*, No. 1:20-CV-195, 2021 WL 7708531, at *5 (S.D. Tex. Aug. 6, 2021) ("the Court will apply *Hinojos* and concludes that Underwriters' initial payment on Terrazas's claim does not insulate Underwriters from liability when the appraisal process later determines a higher value for the covered loss."); *White v. Allstate Vehicle & Prop. Ins. Co.*, No. 6:19-CV-00066, 2021 WL 4311114, at *7-10 (S.D. Tex. Sept. 21, 2021); *Texas Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F. Supp. 3d 669, 681 (S.D. Tex. 2021) ("But there is a genuine factual dispute over whether the water damage is covered, and thus whether some amount due is being withheld. If Defendant is incorrect and Policy proceeds are due, those amounts are untimely as a matter of law, warranting penalty interest under TEX. INS. CODE § 542.060.").

If breach of the Policy is proven at trial, then State Farm's payment may not satisfy the 60-day deadline to pay in full. *See Randel v. Travelers Lloyds of Texas Ins. Co.*, 9 F.4th 264, 269 (5th Cir. 2021) (internal citation omitted) (quoting *Hinojos*, 619 S.W.3d at 654, 657 n.34) ("Because the insurer in *Hinojos* paid 'significantly less within the statutory deadline than the amount the appraisers ultimately determined that it owed on the claim'—the difference being $23,000—its payment was not timely."); *Barbara Techs.*, 589 S.W.3d at 819 (citations omitted) ("Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the

---

[12] In *Barbara Tech*, the Fifth Circuit reversed the trial court's grant of summary judgment for State Farm, stating that State Farm's TPPCA liability depended on a determination as to whether it failed to pay benefits owed under the policy. *Id*. at 828 ("To the extent that section 542.060 applies, Barbara Tech will have the opportunity to argue that State Farm owed Barbara Tech benefits under the policy, was therefore 'liable' under the policy when it rejected the claim, and thus owes damages under the TPPCA".).

REPORT AND RECOMMENDATION – Page 17

terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process.").[13] A genuine issue of material fact thus exists regarding whether State Farm paid the amount owed on the claim within 60 days as required by § 542.058(a) *See Barbara Techs.*, 589 S.W.3d at 818 (alteration in original) (quoting *Higginbotham v. State Farm Mutual Automobile Insurance*, 103 F.3d 456, 461 (5th Cir. 1997)) ("the evidence clearly showed that State Farm owed statutory damages under the TPPCA's prompt pay provisions because 'State Farm chose to reject [the insured's] claim, which necessarily means it failed to pay within 60 days of its receipt of all necessary paperwork, as specified by [the TPPCA].'").

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendant State Farm Lloyds's Motion for Summary Judgment [Dkt. 36] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends **GRANTING** summary judgment for State Farm on Plaintiff's Chapter 541 claims under the Texas Insurance Code and any claims under §§ 542.055, 542.056, and 542.057 of the Texas Insurance Code. The Court further recommends **DENYING** summary judgment as to Plaintiff's prompt payment claims under §§ 542.058 and 542.060 of the Texas Insurance Code and permitting such claims to proceed to trial. Plaintiff's breach of contract claim should also proceed to trial.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

---

[13] State Farm urges that summary judgment is still warranted where Plaintiff has "no evidence to support an essential element" of a claim [Dkt. 36 at 5]. As discussed *supra*, Plaintiff has proffered evidence that raises a fact question regarding whether State Farm's refusal to pay the appraisal award is breach of the Policy. This factual question bears on both the breach of contract claim and the prompt payment claim.

specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of May, 2022.**

_____

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE